UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALISTAIR MCGEE,

          Movant,

v.

UNITED STATES OF AMERICA,

          Respondent.
_____/

Criminal Case No. 10-20075-3
Civil Case No. 13-11601

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**ORDER DENYING MOVANT'S MOTION FOR EXTENSION OF TIME TO REPLY [154]; DENYING MOVANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE [132]; AND DENYING CERTIFICATE OF APPEALABILITY**

On October 6, 2010, a jury convicted Movant of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). On January 25, 2011, this Court sentenced Movant to seventeen years (204 months) of imprisonment and five years of supervised release.[1] Movant appealed his conviction and sentence, which the Sixth Circuit affirmed on January 7, 2013. On April 9, 2013, Movant filed the instant Motion to Vacate, Set Aside, or Correct Sentence [132]. On November 10, 2014, the Court issued an Order [144] directing the government to respond to Movant's motion by

---

[1] On September 21, 2015, the Court issued an Order [162] reducing Movant's sentence to 151 months (12 years and 7 months) to reflect a retroactive reduction in the applicable sentencing guidelines.

1

December 15, 2014. The government filed its Response [150] on December 9, 2014. On September 8, 2015, Movant filed a Motion for Extension of Time to Reply [154].

Movant has not provided an adequate explanation for his failure to file a reply in the many months since the government filed its Response. Further, the Court finds a reply brief unlikely to change the result. Therefore, Movant's Motion for Extension of Time to Reply [154] is **DENIED**. For the reasons stated below, Movant's Motion to Vacate, Set Aside, or Correct Sentence [132] is **DENIED**. Movant is **DENIED** a certificate of appealability.

## FACTUAL BACKGROUND

On appeal from Movant's conviction, the Sixth Circuit summarized the background of this case, in part, as follows:

> The investigation in this case began in January 2010, when a confidential informant, "Nop," told ATF Agent Joseph Nether about an armed home-invasion crew. Nop introduced Nether, working undercover and posing as a drug courier for a large narcotics organization, to Porter, a member of the group with whom Nop had previously committed these armed robberies. On January 19, 2010, Nether told Porter that he wanted the Mexican cartel for which he worked to be "hit" because it paid him too little for his courier services and refused to compensate him properly for the dangerousness of his job. Nether mentioned that a typical shipment would include more than thirty kilograms of cocaine and that there were always at least two armed people guarding the drug house. When Nether asked if Porter would be interested in the job, Porter responded, "That's what we do. That's what we do. We do it all the

time." Nether explained to Porter that the cartel used a different house for each delivery and that once he learned the location of the stash house, the crew would have to rob it within a couple of hours, before the cocaine was sent out with couriers.

On January 28, 2010, Nop telephoned Porter and arranged for Nop, Porter, and Nether to meet at a local restaurant to discuss the robbery plans. Nether told Porter that he anticipated the arrival of thirty to forty kilograms of cocaine around February 1. On February 1, Nop called Porter to let him know that the robbery would occur the next day and to arrange a meeting of the crew at the restaurant on the day of the robbery. Porter told Nop that he would bring McGee and another individual, later revealed to be Howard Barkley, as part of the crew.

When Nether arrived at the restaurant, Porter, McGee, and Nop were already there. They reviewed the plans for the robbery. McGee told Nether, "I'm following lead baby, I'm wit ya'll, whatever ya'll, I'm rollin." Later, the last member of the team, Barkley, arrived at the meeting. McGee had recruited Barkley to participate in the robbery as the driver. Porter then dismissed the crew with instructions to retrieve the guns that they would carry for the robbery and reconvene at a local liquor store. Barkley went with McGee to McGee's house, where McGee retrieved an assault rifle. The crew members reassembled at the liquor store and continued on to the storage facility where Nether indicated the robbery would take place. Nop, Nether, Porter, and Barkley all entered through the gate, but McGee did not follow. He claimed that the gate had closed too quickly, so Nether gave him the gate code over the telephone. At that point, officers announced themselves and arrested Porter, Nop, and Barkley. McGee escaped, but was later arrested.

After the arrests, officers received information that there were firearms at Porter's mother's residence. Upon a search of her home, officers discovered a Ruger Mini–14 .223 caliber rifle, a 12–gauge Mossberg shotgun, a 20–gauge Springfield shotgun, and a .40 caliber HMK handgun. Two of the firearms had recently been stolen from McGee's neighbor in a home invasion that McGee had arranged for Porter and other crew members to commit.

McGee pled not guilty and went to trial on October 5–6, 2010. On the morning of trial, McGee's counsel moved to exclude testimony

3

relating to the uncharged home invasion robbery under Federal Rule of Evidence 404(b), asserting that it would be more prejudicial than probative if admitted. The district court denied McGee's motion, agreeing with the government that the uncharged robbery was within the charged conspiracy because a gun found in Barkley's home following his arrest was stolen in the course of that robbery, and because the two robberies involved the same group acting together on two consecutive days. McGee's counsel did not move for acquittal at the close of the government's case or at the end of all of the evidence. At the conclusion of the trial, the jury convicted McGee of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). McGee was sentenced to 204 months of imprisonment and five years of supervised release.

*United States v. McGee*, 510 F. App'x 377, 379–80 (6th Cir. 2013).

## ANALYSIS

To succeed on a motion to vacate, set aside, or correct a sentence, a movant must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

### I. Insufficient Evidence

Movant argues that his conviction was unlawful because there was insufficient evidence to support a conviction for conspiracy to possess with intent to distribute five kilograms or more of cocaine. Movant claims that the evidence

4

was insufficient because it showed only that he agreed to play the role of a "gun man" who would facilitate the robbery, but would be uninvolved in possessing or selling the drugs. Movant also argues that he never entered the location where the arrest took place, and therefore took no step towards the underlying offense of robbery, "which would set the course of a true possession with the intent to distribute cocaine." Relatedly, Movant suggests that there could be no attempted robbery because the "stash house" to be robbed was of an unknown location and was, in fact, fictitious.

The Sixth Circuit held on direct appeal that sufficient evidence supported Movant's conviction. *McGee*, 510 F. App'x at 382. Movant's present challenge to the sufficiency of the evidence therefore fails.

## II. Ineffective Assistance of Counsel

Movant alleges a violation of his constitutional right to counsel, "an error of constitutional magnitude." *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). This claim is exempted from the general rule barring a court from considering, on a motion to vacate sentence under 28 U.S.C.§ 2255, arguments not raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). In any event, Movant raised an argument based in the ineffective assistance of counsel on direct appeal;

the Sixth Circuit held that the arguments should be addressed in collateral proceedings such as these. *McGee*, 510 F. App'x at 382.

To establish ineffective assistance of counsel, Movant must show that his counsel rendered deficient performance and thereby prejudiced Movant's defense so as to render the outcome of the proceedings unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Movant identifies many alleged deficiencies in his counsel's performance. The Court will address them in turn.

### A. Failure to advise of the consequences of conviction

Movant claims that his counsel told him he would face no more than ten years of imprisonment, thereby failing to inform him of a seventeen-year mandatory minimum sentence. However, Movant is mistaken; though Movant was sentenced to seventeen years of imprisonment, the mandatory minimum was only ten years. In essence, then, Movant's claim is that his counsel was deficient for portraying his *minimum* ten-year sentence as a *maximum* ten-year sentence.

This argument fails. On the first day of trial, and before the trial began, both government counsel and Movant's counsel stated on the record that the charge carried a ten-year mandatory minimum. The Court asked Movant to confirm that he understood the minimum sentence and that he faced the possibility of a sentence of life imprisonment. Movant confirmed that he understood both and that he

nevertheless chose to proceed to trial. Thus, Movant cannot show that his counsel failed to inform him of the ten-year mandatory minimum or that he was prejudiced by such a failure.

### B. Failure to challenge evidence regarding uncharged robbery

Movant argues that his counsel did not effectively contest the admission of evidence concerning an uncharged robbery, which the Court—after initially ruling otherwise—admitted into evidence because it was intrinsic to the charged conspiracy. However, Movant's counsel did challenge the admission of this evidence. The Court simply rejected counsel's argument. The Sixth Circuit affirmed the Court's admission of the evidence on appeal, holding that it was not an abuse of discretion. *McGee*, 510 F. App'x at 381. Movant does not specify any way in which his counsel's challenge to the evidence was deficient. This argument therefore fails.

### C. Failure to assert Movant's right to allocution

Movant argues that his trial counsel was ineffective for failing to assert Movant's right of allocution at sentencing, and that his appellate counsel was ineffective for failing to raise the denial of this right as an issue on direct appeal. Movant appears to be invoking Federal Rule of Criminal Procedure 32(i)(4)(A)'s requirement that the Court, before imposing sentence, give the defendant's

attorney a chance to speak on the defendant's behalf and personally address the defendant to allow him to speak in favor of mitigating his sentence. FED. R. CRIM. P. 32(i)(4)(A). However, Movant does not explain how the Court failed to meet this requirement. Movant's counsel argued on his behalf at the sentencing hearing. The Court personally addressed Movant at the sentencing hearing to ask what he had to say on his own behalf, and he responded that he had nothing to say. Since Movant was afforded his right to allocution, he has not established that his counsel was ineffective for failing to enforce that right.

### D. Failure to argue withdrawal from conspiracy

Movant faults his counsel for failing to argue the affirmative defense of withdrawal from the alleged conspiracy. However, in the process of holding that sufficient evidence supported Movant's conviction, the Sixth Circuit concluded that Movant's act of driving away from the robbery (after the police announced themselves) was a "mere cessation" of criminal activity rather than an affirmative withdrawal. *McGee*, 510 F. App'x at 382 (citing *United States v. Cox*, 565 F.3d 1013, 1016 (6th Cir. 2009)). Movant therefore cannot establish that he was prejudiced by his counsel's failure to argue that driving away constituted withdrawal.

### E. Failure to demand competency hearing

Movant argues that his counsel was ineffective for failing to file a motion to determine Movant's competency to stand trial. "A defendant is competent to stand trial if he has 'a rational as well as factual understanding of the proceedings against him' and 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *United States v. Heard*, 762 F.3d 538, 541 (6th Cir. 2014) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). Aside from a passing reference to his "low mental capacity," Movant does not suggest that he was incompetent to stand trial, let alone that he exhibited signs of incompetence sufficient to render his counsel's performance deficient for failure to request a competency hearing. Moreover, even in the absence of a motion by Movant's counsel, the Court was required to hold a competency hearing on its own motion if faced with reasonable cause to believe that Movant was incompetent to stand trial. *Id.* The Court did not order a competency hearing because it did not discern reasonable cause to doubt Movant's competency—suggesting that even if counsel had requested a competency hearing, it would not have changed the outcome. This argument fails.

### F. Failure to challenge co-defendants' statements and testimony

Movant asserts that his counsel should have objected to the admission of unspecified out-of-court statements by his co-defendants without cross examination and challenged Defendant Porter's competency as a witness. Movant does not explain why his counsel should have done these things. He has therefore forfeited these arguments for failure to develop their substance. *E.g.*, *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 618 n.9 (6th Cir. 2014) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

### G. Failure to raise an entrapment defense

Movant faults his counsel for failing to argue that government agent Nether induced Movant's participation in a conspiracy that he had no predisposition to join, entitling him to an entrapment instruction. Movant's reasoning seems to be that the evidence supported his predisposition to commit *home invasion* only, because the government's confidential informant informed Nether only of Movant's involvement in home invasions. Thus, the argument goes, Movant could have proved he was not predisposed to join the conspiracy proposed by Nether, since it involved a target crime other than the only crime Movant was known to have committed on his own initiative. However, "the ready commission of the criminal act amply demonstrates the defendant's predisposition." *United States v. Hammadi*, 737 F.3d 1043, 1049 (6th Cir. 2013) (quoting *United States v.*

*Kussmaul*, 987 F.2d 345, 349 (6th Cir. 1993)). Regardless of whether Movant had committed a robbery tied to drug trafficking before, he showed a predisposition to do so by agreeing to Nether's proposed conspiracy, and attempting to carry it out, without hesitation. Because the entrapment defense that Movant envisions is meritless, he cannot show that his counsel was deficient for failing to press it.

### H. Failure to object regarding § 3553(a) factors

Movant argues that his counsel should have objected at sentencing to the Court's consideration of the 18 U.S.C. § 3553(a) factors on the grounds that the Court considered "just one or two" of the factors and not all of them. On direct appeal, the Sixth Circuit held that the Court followed the factors and reached a sentence that was not substantively unreasonable. *McGee*, 510 Fed. App'x at 383. Accordingly, Movant has not shown that his counsel rendered deficient performance by failing to object to the Court's consideration of the factors, or that such an objection might have changed the outcome.

### III. Procedural Default

Under the doctrine of procedural default, a defendant who has failed to raise an issue on direct appeal is generally barred from raising the issue via a motion under § 2255 unless he can demonstrate cause and prejudice to excuse his failure to raise it on direct appeal. *Huff v. United States*, 734 F.3d 600, 605–06 (6th Cir.

11

2013) (citing *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000)). Movant attempts to raise several issues that he did not raise on direct appeal. He argues that the Court should have provided additional jury instructions; that the Court erred by failing to make a specific finding that Movant, rather than the conspiracy, was accountable for a particular quantity of drugs; and that the Court erroneously applied a firearm enhancement at sentencing. He does not attempt to show cause for his failure to raise these issues on direct appeal. Accordingly, the Court holds that these arguments are barred by the doctrine of procedural default.

## CONCLUSION

For the reasons stated above, the Court will deny Movant's motion to vacate, set aside, or correct his sentence. Movant's current 151-month sentence will remain intact. Further, Movant has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will not grant Movant a certificate of appealability. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Accordingly,

**IT IS ORDERED** that Movant's Motion for Extension of Time to Reply [154] is **DENIED**.

**IT IS FURTHER ORDERED** that Movant's Motion to Vacate, Set Aside, or Correct Sentence [132] is **DENIED**.

**IT IS FURTHER ORDERED** that Movant is **DENIED** a certificate of appealability.

                                                    s/Arthur J. Tarnow
                                                    Arthur J. Tarnow
Dated: October 2, 2015           Senior United States District Judge